The case for today is number 2014-413-43, Hilda Gonzalez-Garza v. Starr County, et al. May it please the court. Jenny Smith on behalf of the appellant, Hilda Gonzalez-Garza. There are three issues before this court on appeal today, but I'd like to focus on the issue of whether the district court erred when it ordered reinstatement despite a binding jury verdict of front pay in this case. This court should reverse the decision of the district court and render judgment on the jury's verdict, on the jury's unanimous binding verdict, because the parties consented to... Okay, can I separate out for the moment Starr County and Mr. Canales? Starr County received a summary judgment on everything except this one Texas equitable claim, so they were still a party at the time of the jury trial but not part of the First Amendment retaliation case under the U.S. Constitution, and so I'm trying to understand if we were to reverse that, you've asked us to reverse that summary judgment, what would happen? Would you have to go back for a trial against them, or are they bound by the jury verdict by the virtue of having been and participated in it and sort of seem to embrace this whole case by moving for reinstatement and sort of remaining a party? Do you understand my question? It's a little weird here. Yes, Your Honor, and as you pointed out, Starr County actually did move for reinstatement here and seemingly in doing so seemed to move for judgment against itself. If this court were to reverse the summary judgment, there's no need for an additional jury finding. During the charge conference in this case, the district court, when discussing with counsel what the jury questions would be, there was a discussion about whether two questions were needed or if one was sufficient, and the district court said, well, the county attorney is the actor for the county, therefore one question was sufficient. The question of municipal liability is a question of law that can be reviewed de novo by this court, and it essentially would, because Mr. Canales was found liable under the jury's verdict in this case, the mere question of municipal liability is whether that liability can be attributed to Starr County. And again, after having moved for reinstatement, Starr County seems to acknowledge that liability, which is odd because the summary judgment ruling was different. But are they bound by that jury verdict? Like I said, normally if you have two defendants, one of them gets summary judgment, they go home. The trial goes on against the other guy. Whatever the verdict is there, they're not bound by it because they weren't even there. Here we have them still in the case for this equitable claim and sort of hanging out and filing stuff as defendants, plural, after the summary judgment and seeming to kind of just stay in. And so I have the question of, you know, are they bound by the verdict even though they received summary judgment? It's an odd circumstance, and I'd just like your view, and I'll get opposing counsel's view as well on that. They are bound by the verdict, yes, Your Honor. That's a straightforward question. Why? That's a straightforward answer. They are bound because the record reflects at the charge conference the question came out, do we need two questions or one? And one question was sufficient to, as the district court acknowledged, because Mr. Canales was the actor for the county, and therefore that jury verdict would be binding on both of them. And part of the reason for this also is reflected in the jury questions and the jury instructions that were submitted by both parties in this case, where both parties submitted questions about whether or not, and I'm speaking generally here, whether or not the defendants were responsible for this conduct. And then the ultimate question obviously went to Mr. Canales in the final jury charge, but both parties understood that it was a question of liability as to the defendants. Okay. I have a question then about the summary judgment, the argument. I mean, the question before is, you know, if we were to agree with you on the summary judgment also. I don't see how we could agree with you on the summary judgment because there was no evidence or argument from your client regarding municipal liability at the time of summary judgment. We can't look at the trial testimony to determine whether there was any evidence that he was the policyman, Canales was the final authority over the firing. We have to look at the summary judgment evidence, and I don't believe you made the argument that he was the final decision maker before the trial judge. And even if you did make the argument, I don't believe you put forth any summary judgment evidence on the point. Maybe I'm wrong, and I'd love to – if you could point me to that argument and that summary judgment evidence, if you have some. I'll start with the first part of your question, which is essentially whether or not that was raised to the district court. At the time of the summary judgment briefing in this case, Mr. Canales had not yet been deposed and actually was not deposed but was questioned at trial. Therefore, the evidence on the final policymaker didn't come out until that time. Right. So you can't – at summary judgment, there was no evidence from which the judge could rule differently. There was no evidence put forward at the time of summary judgment. That is correct. And that's the time we decide whether summary judgment is proper, right? That's correct, Your Honor. So you can't win on summary judgment, can you? I would disagree because at the trial court, Ms. Garza filed a motion for reconsideration on the issue once the evidence became available at trial in this case. And moreover, the district court, as reflected in the record at pages 638 to 639, it's Record Excerpt 7, when the court denied the motion for reconsideration, the court makes a note that it essentially considered whether or not Mr. Canales was in fact the final policymaker in this case. And so the issue is preserved that way by, one, filing the motion for reconsideration and, two, the district court's reference to it and his order denying the motion for reconsideration. It's not right if there's no evidence at the time of summary judgment. The summary judgment wasn't wrong. The summary judgment was wrong. It's not wrong if you don't have any evidence in the record to support your position. You said it's a question of law. Do you have legal argument that the county attorney is always the final policymaker on matters of his office? Because you're saying it's a question of law, then you wouldn't have needed evidence. I'm trying to understand that argument. Yes, Your Honor. In Brady v. Corbin County, this court can look to its own precedent in that case. That dealt with sheriffs and deputies and whether or not the actions of not rehiring deputies could be attributable to the sheriff. And in that case, the court looked to PEMBAR and said, well, the argument presented before this court was, well, the county commissioner said employment policy. Because the county commissioner said employment policy, you know, the sheriff was not a final decisionmaker. But this court then looked at Texas law, and Texas law says deputies serve at the pleasure of the sheriff. Similarly, although the county commissioner signed off on employment policy for Starr County, it's important here because Texas law and Texas government code section 45.002 allows county attorneys to appoint their assistants. Therefore, just like in Brady v. Corbin County where this court determined that the sheriff was responsible and the final policymaker with respect to filling available employment positions in the sheriff's department, here under Texas law, the county attorney is likewise the one who is responsible. So is it your position you didn't need evidence because under Texas law, the county attorney is the final decisionmaker on the question presented? That's correct, Your Honor. But you didn't argue that at the time of summary judgment. That is correct. It was not argued at summary judgment, but it was argued on the motion for reconsideration. So you're saying that the error of the trial court was in not granting the motion for reconsideration. It's a little different standard that we judge it by, but nonetheless, you can make that argument. Is that the argument you're making? Did you brief that? Are you making the argument that the district court erred in denying your motion for reconsideration? Yes, Your Honor. Did you brief that? That was not briefed, no. You didn't brief that? No, Your Honor, but we did brief the question of whether or not summary judgment was proper in this case, and it was not proper in this case. Okay, but this is really hard to follow because it seems to me you're saying we didn't make the argument on the summary judgment, but then we made it in the motion for reconsideration, which would seem to suggest you messed up on the summary judgment, but you tried to fix it with the motion for reconsideration. But then on appeal, you argue the motion for summary judgment, not the motion for reconsideration. I mean, what does it matter? This doesn't make any sense to me. Can you help me clarify this? I kind of want to get to a bottom line, but these are important procedural points. At the time of the motion for summary judgment, the evidence had not been developed yet about whether or not. . . Well, you're saying you don't need evidence, that you've got a statute that says this guy's the final policy. Well, we don't need evidence. We don't care. So why wouldn't that argument be made at the summary judgment? And if you forgot to make it, you make it on the motion for reconsideration, why wouldn't you argue to us that that motion for reconsideration should have been granted? Because it is still our position that the summary judgment was wrong as a matter of law, and this court can take a look at that de novo. And the argument then was preserved by moving for the motion for reconsideration. Well, and I understand we derailed what was to be the point of your oral argument by asking you these other questions that we had based upon your briefs, and you really wanted to argue what perhaps, well, you may consider. . . Judges tend to argue their strongest points first. And you think that the advisory determination was wrong. Do you want to talk about that? Yes, Your Honor. Under this court's precedent, in an opinion by Judge Rivley, in Whiting v. Jackson State University, the issue of back pay was submitted to the jury without objection. And when that happens, that's a binding verdict. And that triggers Rule 39C. And under Federal Rule of Civil Procedure 39C, there are two paths that the district court can take. Under Subsection 1, the district court may try an issue with an advisory jury. Under Subsection 2, the district court may, with the party's consent, try any issue by a jury whose verdict has the same effect as if a jury trial had been as a matter of right. And there are two very important points in time at the district court in this case. First, when the jury was empaneled, the record is silent that there was any intent by anyone to have an advisory verdict in this case. And as this court has recognized in Gloria v. Valley Grain Products, parties are entitled to know if they are trying their case to the bench or to the jury prior to the jury being empaneled. I have a question. What if the record isn't silent but is instead ambiguous? What happens then? This court should follow its precedent in Gloria v. Valley Grain Products. In that case, and I think it bears a brief discussion of the facts in that case, in that case, in the middle of trial, the parties all kind of said, oh, maybe this is advisory, maybe it's not. There was some confusion, an admitted confusion. And in fact, Gloria, the plaintiff in that case, actually said, you know, in moving to seek front pay after a jury trial, said, this verdict might have been advisory and told the district court that. Nonetheless, as this court said in that opinion, we are led out of, if not spared, by the confusion of the Federal Rules of Civil Procedure 39C. This issue was submitted to the jury. All of the pretrial orders reflected that this issue was going to be submitted to the jury. And no objection. Well, what about the fact that it's the district court that made multiple statements that it was advisory throughout the proceedings and also described it as advisory in the motion for entry of judgment? So it's not the parties that are perhaps confused, perhaps respectfully, perhaps it's the district court that's confused at some point, and no one says, Your Honor, this is not advisory. Does that still, does the rule still apply? If it's the district court, the one that's making the statements about it being advisory? I do see I'm short on time. May I answer your question and briefly conclude? You may answer your question. And we may have some more questions, so go ahead. Okay. Here, I appreciate you bringing up the conversation from the district court because prior to the jury being in panel, the district court never said, Hey, guys, this is going to be an advisory jury verdict. There was never any indication of that. Moreover, the defendant, Stark County here, did not ever, you know, they requested a jury trial as well, and, you know, there was never any limitation or request that the equitable issues not be submitted to the jury in this case. Then in the charge conference, and I believe this is what Judge Elrod, you're talking about, record 1131 to 1132, there's a discussion about, quote, unquote, election of remedies. And, in fact, if this court were to hold the jury's verdict was advisory, with all due respect, regrettably, Ms. Garza was misled by the district court because Ms. Garza was told she'll just decide that, I guess, after the jury verdict. I guess you could make that election at that point. Yeah, election of remedies is different from advisory jury, is your point. Did he ever use the term advisory jury or advisory jury verdict or whatever before the verdict? Use that phrase advisory. No, Your Honor. I never found in the record the use of advisory until post-verdict. First time I see that word come up. And the only reference to anything that could be confusing was this election of remedies, which your position is election of remedies is I pick between negligence and breach of contract, not it's an advisory. And now this election of remedies is one of these causes of action is the one you pick. In this case, it's one of these remedies is the one you pick, and that's your election, meaning Ms. Garza's election, rather than being an advisory jury. That's correct, Your Honor. So that was your understanding of what he meant by she'll pick that. That's correct, Your Honor. Okay. Okay. Everybody gets two more minutes. I have a question about assuming you're correct that it wasn't advisory and that it was binding, the other side makes an argument that the award is excessive, and I'm curious as to whether you believe that they can make that argument at this point and whether that is preserved. I do not believe they can make that argument at this point, Your Honor. Starr County has never challenged the amount of the front pay award specifically. Starr County, at the district court level, did move to remit unsuccessfully the award of back pay but hung their hat on reinstatement instead versus reducing the amount of back pay. And because this is a binding jury verdict, the standard of review, because there was no JMOL after the jury returned its verdict, is a plain error standard. But even if this court looked at it under legal sufficiency, the evidence is also there to support the jury's verdict. Okay. And then turning to the other side, if for some reason you were not successful on your advisory point, is reinstatement feasible? Reinstatement is not feasible. Isn't she working there now? Yes, Your Honor. I mean, she's been working there a year, so it's not just feasible. She's done it, right? Respectfully, Your Honor. Is your point it's flaky because as soon as this is all over, they're going to fire her again? Really, rather than infeasible? Respectfully, Your Honor, it is infeasible. And, yes, it is a fact that she has been working there since the order of reinstatement, although kind of that post-order of reinstatement after the provisional order is outside the record. In the same job with the same pay. It is not the same job, Your Honor. It is the same pay with benefits. But the job, this court looks at several factors. May I answer your question? Yes. This court looks at several factors to determine whether or not a reinstatement is, in fact, feasible. And two of those factors are, one, animosity, and, second, whether or not the positions are comparable. Here, this position is not comparable. Ms. Garza, prior to her legal termination, was a CPS attorney. She was, in fact, defendants noted in their opening statement, she was appointed as a CPS attorney, that was her job, and that's all she did. And then there was testimony of the whole point of hiring Ms. Garza was to have a CPS attorney on staff. Post-reinstatement, Starr County, for lack of a better word, made up a position. Once it didn't like the jury verdict, it made up a position so that Ms. Garza could come in and do criminal matters. And the reason for that was because the CPS position had already been filled. It had already been taken. So now she's still representing people, I mean, doing the same type of caseload. You know, we have that case that says detectives get, if they're not detecting anymore, then their job is changed. And I'm wondering, has the job changed such that we can't say it's the same? The job has changed because her focus was primarily family law. She was handling protective orders, issues with family and kids. And now it's switched over to criminal law exclusively. And not only is the job different, but upon reinstatement here, alleged reinstatement because it's not feasible, Ms. Garza was also demoted. Mr. Canales testified at trial that he is the boss of everyone, everyone reports to him. But that's not true with Ms. Garza now. Ms. Garza instead has to report to Mr. Julian Castaneda, an intermediary, and she's singled out for this. And she's the only person in that office, the nine-person office, who has to report to an intermediary. Finally, animosity is a huge factor here. At trial. If she were to prevail on your claim, the $1.4 million, that's just a judgment as it stands right now, if we don't touch the summary judgment, against Mr. Canales personally, right? That's correct, Your Honor. Is he entitled to any kind of indemnity from the county that you know of? I'm not aware of that. Okay. I'm sorry. Finish about the animosity. Insurance or something. That's not before us, right? I'm not asking about insurance. I'm asking about indemnity from the county because it goes to my issue about whether they're somewhat bound by this verdict anyway. So that's why I'm asking. And if you don't know, that's fine. You can finish on animosity. As far as the animosity at trial, Stark County called staff, called other attorneys in Stark County, called the only county court at law judge who still presides in Stark County, all to testify that Ms. Garza allegedly was incompetent at her job. And now she has to walk back into that? So there is significant animosity here. And not only was there testimony about alleged incompetency, Stark County went to the local newspaper, and this came out at trial, and discussed alleged incompetence as well with the local newspaper. So not only is the job not comparable, not only was she demoted, but the animosity is very significant here as well. Okay. You need to wrap it up. Counsel, the judgment is also against the county, is it? That's correct, Your Honor. What difference does it make about that summary judgment? Now the judgment is against Stark County, right? Judgment is against Stark County. The judgment was written so it's against the defendants, plural. Nevertheless, there's a footnote in the judgment that takes Stark County and Mr. Canales in his individual capacity, or sorry, in his official capacity, outside of the purview basically of the judgment for the monetary damages, but leaves in Stark County for purposes of reinstatement. Are there any further questions? I know I need to conclude. No, I think that's it. Thank you. You saved time for rebuttal. Thank you. May it please the court, counsel? My name's Eileen Leeds, and I'm here on behalf of Stark County and Mr. Canales. There's one thing I want to clarify in that the whole issue about Stark County is that Stark County remains in the lawsuit for the equitable claim, which would be front pay or reinstatement, under the Texas Constitution. So then aren't they bound by this jury verdict because it goes to the same issue? Yes. Okay. So you're not disputing that. If we were to find the $1.4 million was properly assessed, then it's assessed against Stark County too. Correct. Okay. Because that is the equitable issue, the front pay. That helps us. Thank you for helping clarify things. The reimbursement versus front pay issue is probably one of the biggest issues in this case, and the advisory versus non-advisory jury. So can you tell us, was the word advisory used, that word, prior to the verdict? Prior to the verdict, I don't believe so. Okay. And so the only thing that creates any ambiguity, if you will, about the advisory or non-advisory nature is this election of remedies point and how we construe that. Correct. Because throughout the trial, there was an ample understanding of the court and the parties that there was this Texas constitutional claim out there. Our joint pretrial orders show that both Miss Garza and the county was trying this essentially on a 1983 compensatory damages issue, and then we also had the Texas constitutional claim. When we submitted our jury instructions and jury questions, we submitted them as if they were for compensatory damages with a loss of earning capacity, not lost future wages. It was a loss of earning capacity, which is what she had in her complaint. And so when the judge brought out his version of questions that were going to be asked, that's when we had the just strictly back pay, and he didn't call it front pay, but it was wages that she will lose in the future. And so that was the first time we ever really talked about front pay when the judge said election of remedies, but I don't think there was any question in anybody's mind there that he was talking about the equitable issue, that they would have to decide later the equitable issue. But the equitable issue would be between reinstatement and the money, not whether the jury verdict is advisory. I mean, to me, election of remedies is I could elect to recover under question one or under question two, and I get to figure out after I see the verdict which one gives me more money, and then I elect. That isn't the same thing as an advisory jury. We talk about election of remedies in cases where the entire jury is binding and everyone knows it. So I don't see how that puts anyone on notice of an advisory jury. Well, it was because there was only going to be one question, and it was as if the two ñ Well, did you argue, wait a minute, whoa, we need a question about earning capacity because that's the one about Mr. Canales individually. I'm only in here for this equitable thing, so that's my question, but, you know, make sure we have a separate question for Mr. Canales. Well, you're actually representing both parties. Correct. But you couldn't really ñ you would have to make the argument that, look, we've got to have this separated out to be ñ actually, you've got a conflict on that, don't you? You've got a conflict. Yeah, you do. Well, I may have, but we knew, but it was understood that that's what was being said to the jury. I mean, isn't the reality that if the judgment is ultimately 1.4 million against Mr. Canales that the county's going to pay it? No. No? He'll pay it individually? No. Nobody has that money, not the county or Mr. Canales. Okay. But the question is that, you know, we would be arguing the 1.4 million as an amount if we have a verdict or if we have a judgment. We didn't get to that point and we didn't appeal that point because the Fifth Circuit precedent for reinstatement is so strong. There's case after case after case that submits that reinstatement is way preferred over front pay. Yeah, but this is kind of a weird case in terms of normally reinstatement to, I don't know, ABC Company that has 500 employees. I've got a judgment against ABC Company, but, you know, Mr. X is my boss. It's no big deal. But here she's got a judgment against her boss to the point that he feels the need to put an intermediary between him and her so he doesn't have to talk to her, and you're going to say that's a viable reinstatement? No. In this small office of eight people, not some mass corporation where he's over in Illinois and she's in Alaska? Well, if you look at the Bueno v. City of Don, you know, from that, and I guess case, I don't want to say the holding there, but from that case on, reinstatement just seems to be that is the preferred remedy. This is not infeasible. He did not put in an intermediary in order to, so that he wouldn't have to talk with her. She was the one that presented the problems. And, in fact, if you looked at the hearing we had on reinstatement, we were trying to find out what would make it work. What at the county would make it work? I mean, what did she want at the county? But we don't get to that. And she said nothing. We don't even get to reinstatement if Gloria applies. Gloria doesn't apply, Your Honor. First of all, there are cases after Gloria that are innumerable that say that from Julian on, there are numerous cases that hold that the court can retain for itself the advisory part and submit damages to a jury. We're not dealing with what the court could do. We're dealing with what the court did and what was understood by the parties. Well, that's exactly what Julian holds. It's what the court did. And the Fifth Circuit has said the court can withhold for itself. But the court didn't do that here unless you look at the post-verdict comments to say that it did. Well, that's where I'm trying to tell Justice Haynes that, yes, they did. We understood that the constitutional claim was the election of remedies between, in other words, it was between 1983 and the constitutional claim were the two remedies. But there was no question asked on which you contend is the compensatory damage question was not asked. So the only question that was asked is front pay. So they're clearly entitled to a jury question on compensatory damages, and so why was that not asked? And why did you not object to the failure to ask that? Well, the back pay. That can be compensatory or equitable. There were two questions on damages, back pay and front pay. And, well, it wasn't front pay. It was just pay in the future. It was earnings in the future, which is not the same thing as loss of earnings. My earning capacity may be higher or lower in the future than my actual earnings are today. I like to think my earning capacity is actually higher than my earnings. Correct. But I'm blessed and honored to be in this position that gives me the privilege of those lower earnings. Indeed. But, okay, did you make any arguments to the district court that the amount of the money was wrong? No. Okay. Well, you're bound, aren't you? No. You didn't argue even in a JMOL that it was wrong and that it was calculated wrong. Well, we did argue in our brief that it was excessive. Which brief, to us or to the district court? Yes. You didn't ask that of the district court to say, look, we should reinstate, yada, yada, but if you're not going to reinstate, this $1.4 million is ridiculous. Yes. You did say that. I believe in our brief we say that the 22 years is way out. In which brief? I'm asking in the district court. Where do you know? If you give me a record cite to the district court. No. You never told the district court that. No. And we can't give you any relief, can we? In our brief? We can't give you any relief on that point if you never asked the district court that the damages were excessive. What's the basis, the legal basis for you to get any relief on that? Your Honor, if you look at what the district court said when he was talking, he said that I probably wouldn't give 22 years if I had to look at the amount of damages. And it was our position that he's already said it. Why do I have to argue a point that he is already basically admitting? Because it's $20 million plus, and you want to protect your client. Well, if the judge is already saying he would reduce the front pay amount if given, if he had to, if he had to decide what front pay was. Okay. I mean, respectfully, I think you all are doing your best, but both sides really could take a good hard look at error preservation for future cases and what that involves and what that means, because I think it's fairly significant. Neither side of you all has argued that particularly well, to be honest. It may not affect the outcome. But when you want to preserve error, you don't wait around for the judge to make random comments. You say, Your Honor, this $1.4 million is excessive. The right number is X. May we have a ruling on that or at least in the alternative or something like that. That's how you preserve error. $1.4 million. I understood. Yes. It was after I said 22 years. It was a big amount of money. $1.4 million, $20 million. It was a big amount of money. You said you're not paying it anyway, so. So it's basically our position that the county, Mr. Panales, knew that there was going to be an advisory jury after the judge said, We've got to figure out what we do after they come back, but I'm going to submit it anyway. But the case sort of rises or falls on how we construe that conversation. Is that fair? At least on this point. Yes. Let me ask you a different question talking about the reinstatement. I have the concern that you all carved out this job. So let's say we were to conclude that the job is sufficiently similar and all that. We affirm the whole thing as is, and everybody goes home. Are you all going to fire her the next day? Not at all. Or maybe two weeks later. And then what remedy does she have then? Suing again. We'd be right back here again. I think that's, you know, Mr. Panales even said on the stand during the hearing reinstatement, It has humbled him. He learned his lesson to do things a little slower. And that's because of the nature of the firing that she went and said she was going to run for school board. Two days later, she gets fired. Well, I mean, it sounds like a jury heard all these people say this woman was incompetent and yet so disbelieved, Mr. Panales, that they gave her the entire rest of her life's wages at the county. That's a pretty big exclamation point on what happened here. Yes, and that's what the judge was trying to tell Ms. Garza during the hearing for reinstatement. That, you know, you're hung up on this thing about they called you incompetent at the trial. But nobody believed the witnesses. Nobody believed Mr. Panales when he said she was incompetent. So why are you hung up on the issue that they called you incompetent? Because that is the only problem she presented to the district court to say that it was not feasible to reinstate her. Has it been, has the district court, I'm trying to figure out the timing of this. The district court hasn't considered whether the CPS job is the same as the criminal job. No. And part of the reason that they gave her the criminal job is she had been a district attorney for ten years. And she did criminal law even while she was assistant county attorney. Is it in the record whether you handle the same number of cases and whether you get the same kind of court experience and that sort of thing, that the law jobs are comparable or that one is a lesser, more administrative job? I believe in the hearing for reinstatement, Judge Crane asked most of the questions. He was very concerned about the comparability, about the feasibility, about this animosity of which there was none prior to trial.  The issue of going to the newspaper. The newspaper went to Ms. Garza. They probably saw the lawsuit. They went to Ms. Garza and asked her. So, yeah, they go to the other side. And do you want to make a comment? He did. So, you know, there had been no problem in the workplace. All of this came about because of the lawsuit. Ms. Garza's testimony was she wouldn't have had a problem if the trial hadn't happened. That's not the standard. The standard is, is there animosity in the workplace? Now, if we find that the jury verdict should have been entered, that a judgment should have been entered on the jury verdict, then she loses her job, right, because it's either or, reinstatement or. Correct. Okay. And, you know, I mean. But you all wouldn't go out. Stark County wouldn't go out and hire a replacement for her if she left the position, whether because of a ruling by us or just, you know, some other reason. If she left the position she's in right now, do you agree that was a position sort of created for her? That was a position created for her. And you wouldn't replace her. Stark County wouldn't replace her if she left, would they? I don't know the answer to that. Because that position now handles all criminal trials, which is what she did before when she was a district, assistant district attorney. And so, you know, the number of hours, the number of cases, Mr. The judge made it clear, you know, if you have any problems, you come back to me. You let me know. And there was absolutely no report, no complaint of anything until we get to appeal. When we get to appeal, then that's when this whole infeasibility issue came up. Except they did object to the motion for reinstatement, you know, because you're asking to reinstate versus getting an award of $1.4 million. If we had not reinstated, we would have appealed that judgment. But since there was reinstatement, there was no need to, because that's what we had moved forward. But the Fifth Circuit precedent is pretty clear that reinstatement is preferred. Reinstatement is the preferential remedy by far over front pay. And as to whether or not she would get the $1.4, we would submit that the $1.4 just is not legal, in keeping with Fifth Circuit precedent. No court in the Fifth Circuit has ever awarded front pay over, I believe, ten years is the longest. But they've looked at it, and two years, three years, four years, five years. What standard lets us even touch that? What standard? How is that theory that we can even touch that? Well, Your Honor, it's kind of like, you know, you have a defendant on the stand, or you're representing a defendant for murder. He stabbed somebody 20 times, okay? heinous crime. But it's not legal if the guy was already dead. So, I mean, there is a legal standard. Can you review that? Yes. You can review it if it was preserved in the trial court. And if it's in the state court, we can't review it under EDPA under, like, numerous technicalities that we have. Well, I mean, we would review it on plain error if it was a criminal case. In this case, it is plain error under Fifth Circuit precedent to award her 22 years. But plain error of excessiveness? Yeah, I mean, okay. You assess the plain error of excessiveness? I would say that there's just no precedent for awarding her that number of years. When what you're supposed to look at is her job, the amount of time she spent at different jobs. The amount of time she probably would have spent at this job. Was it likely that she would have been there for 22 years? She's running right now for, you know, a position. She would only stay there as long as this county attorney is in his position. Well, maybe, maybe not. True. There's plenty of employees of county attorney and district attorney's offices who remain through numerous district and county attorneys in office. True. But the smaller the county, the less likely that is. Well, and that's part of the problem with your feasibility of reinstatement. It's a small county where everybody and their brother apparently showed up and said she was incompetent to help out Mr. Canales, and then the jury didn't believe it. And they may have looked at that and thought this woman isn't going to be terribly employable in this county. After all, these people have sided with Mr. Canales, so we need to give her basically her life's wages here. And I don't know that that's necessarily as a matter of law a wrong analysis. It's high. I agree. I have a question. And let's see if you have some response. Do you want to respond to that? I mean, it's a logical evaluation that the jury made given this case. Well, they took it as, you know, it smacked of politics because of the way that determination was handled. And the people that came into trial were the people that had to do or that dealt with CPS that were working with her. Not other people in the county that would have anything to do. She said the county court at law judge testified. Yes. That's pretty big. You get the one judge in town to come in and call you incompetent. I mean, it's kind of a big deal. He didn't. Okay. Well, that's what she said. I haven't studied that part of the record because it wasn't really relevant to this piece because you're not questioning that. No, the judge did not call her incompetent. It was other CPS workers. It was Mr. Canales. Who called the county judge, the county court at law judge? We did. Okay. My question. I'm looking at your red brief here, and I have been unable to find where you have argued that it was plain error to award $1.4 million, and where you've gone through. And we have published case law that says if you don't go through the four plain error factors, we're not going to find prong four satisfied if you haven't even bothered to go through the factors. Where have you gone through any of the plain error factors or even told us that plain error is the applicable standard? We did not argue that. Okay.  Thank you, Your Honors. Just a few brief points on rebuttal to kind of logistical record things. The record on appeal, page 1086, that's where Judge Molina's testimony is located regarding and maybe perhaps he didn't use the exact word incompetent, but discussed Ms. Garza's alleged lack of preparation for court. And then as to defendant's discussion about the jury instructions in this case, I wanted to let the court know in the opening brief Ms. Garza had equated earning capacity to lost wages. And, in fact, I wanted to clarify with the court their submitted jury instructions were, in fact, limited to lost earning capacity and back pay, not expressly front pay. Nevertheless, the question of front pay ended up before the jury without objection. I was going to respond as well to Starr County's argument regarding Fifth Circuit precedents, clear that reinstatement is the preferred remedy. That body of law, there's no argument that that's true, that this court has generally determined that reinstatement is the preferable remedy. You mean there's no argument that that's not true? Sorry. You're agreeing with that body of law? Yes, I'm agreeing. Sorry, Your Honor. Yes, I'm agreeing with that body of law. But the argument before this court today is that that body of law is not applicable here when front pay was submitted by consent to the jury. And, instead, the applicable law is Gloria v. Valley Grain Products and Judge Reveley's opinion in Whitting v. Jackson State University. Okay, so you have two arguments on the reinstatement. You have a binding jury verdict in your view, that's the end of the matter. If you're wrong on that, then you have the infeasibility argument. That's correct, Your Honor. But the infeasibility argument, don't we judge the district court's findings there on clearly erroneous because aren't they largely factual? Yes, you would review the findings for clearly erroneous. The decision to award reinstatement generally in lieu of front pay is reviewed for an abuse of discretion. So those are the two standards applicable to that part. And the final point I wanted to discuss was the excessiveness that Starkey County was alleging that the jury award was excessive. But, as Your Honor mentioned, plain error was not briefed here. The excessiveness cannot be challenged. Well, I mean, is there an argument that they wouldn't brief plain error because the judge did not enter judgment on the $1.4 million? So how do they challenge the excessiveness of a jury verdict that judgment was not entered on? What's the right procedure for them to employ in the district court and our court? In the district court, as Your Honor pointed out, they could have argued in the alternative in their motion for reinstatement and challenged maybe or included in their motion for remittitor a request for, in the alternative, please remit the front pay award. And that wasn't done here. And then in the responsive briefing before this court, there was no argument as to plain error. So those are some avenues that could have been had at the district court and before this court that were not done. And finally, because excessiveness cannot be challenged here, and this was a binding verdict under Rule 39C, the jury award can't be challenged on its excessiveness. Now, based on her concession that Starkey County is also liable, I mean, should the judgment be reformed to reflect that? If we end up saying that the 1.5, I guess if we go your way entirely, we send it back to enter judgment on 1.4 million against both Starkey County and Canales. That would be correct. And if we don't go your way, it doesn't matter on that. I guess that's the point. Because you're not arguing back pay is a different piece, so you're not arguing that. That's correct. And back pay is not at issue before this court. That was not appealed. Okay. If there are no further questions, I respectfully request that this court reverse and render judgment on the jury's verdict. Thank you for your time. Thank you.